IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: TEAM SYSTEMS INTERNATIONAL, LLC, | : | Chapter 7 |
| Debtor. | : : | Bankr. Case No. 22-10066-CTG |
| | : : | Adv. Proc. No. 23-50004 (CTG) |
| RANDY M. MOTT, | : : | |
| Appellant, | : : | |
| v. | : | Civ. No. 24-850-GBW |
| | : | Civ. No. 24-851-GBW |
| GEORGE L. MILLER, solely in his capacity as the Chater 7 Trustee of the estate of TEAM SYSTEMS INTERNATIONAL, LLC, GPDEV LLC, and SIMONS EXPLORATION, INC., | : : : : : | Civ. No. 24-1035-GBW |
| Appellees. | : : | |

## **MEMORANDUM**

This appeal arises in the Chapter 7 case of Team Systems International, LLC ("TSI" or "Debtor"). Before the Court is an emergency motion for stay pending appeal (Civ. No. 24-851-GBW, D.I. 9)[1] ("Emergency Stay Motion") filed by *pro se* appellant Randy M. Mott, Esq. ("Appellant") with respect to his appeal of the Bankruptcy Court's July 22, 2024 Order (Adv. D.I. 268) ("Interim Order") which (1) awarded sanctions under 28 U.S.C. § 1927 in the form of attorneys' fees, (2) directed submissions from the parties regarding same, and (3) left for later determination the amount of the sanctions to be imposed. The notice of appeal of the Interim Order (D.I. 1) was not accompanied by a motion for leave to appeal an interlocutory order, and the docket reflects no such motion. On August 19, 2024, appellee, George L. Miller, in his capacity

---

[1] The appeal of the Interim Order was erroneously docketed twice by the Court, and those dockets reflect duplicate requests for relief. *See* Civ. No. 24-850-GBW and Civ. No. 24-851-GBW. For ease of reference, unless otherwise indicated, "D.I. __" refers to the docket of Civ. No. 24-851-GBW.

as the Chapter 7 Trustee for the Debtor's estate, moved to dismiss the appeal for lack of jurisdiction on the basis that the Interim Order is interlocutory (D.I. 4) ("Motion to Dismiss"). The docket reflects no opposition to the Motion to Dismiss.

In the meantime, on September 10, 2024, the Bankruptcy Court entered a final order setting the amount of sanctions (Adv. D.I. 325)[2] ("Final Order"). On September 16, 2024, Appellant filed a separate notice of appeal of the Final Order. (Civ. No. 24-1035-GBW, D.I. 1.)

On September 19, 2024, Appellant filed the Emergency Stay Motion. The caption of the Emergency Stay Motion did not reference a pending appeal number. It was docketed in the appeal of the Interim Order. (Civ. No. 24-851, D.I. 9.) As it was filed after Appellant's notice of appeal of the Final Order, and references same, it is clear that the Emergency Stay Motion should have been docketed in the appeal of the Final Order. Accordingly, the Court will treat the Emergency Stay Motion as a motion to stay the Final Order.

Also, on September 19, 2024, Appellant filed a Motion to Quash Deposition (Civ. No. 24-851-GBW, D.I. 10) ("Motion to Quash") apparently seeking an order from this Court quashing a subpoena noticing a deposition of Appellant scheduled for September 20, 2024 in the adversary proceeding pending before the Bankruptcy Court. Attached to the Motion to Quash was a motion for hearing (*id.* at Ex. B), which was later resubmitted and separately docketed (Civ. No. 24-851-GBW, D.I. 14) ("Motion for Hearing").

For the reasons set forth below, the appeal of the interlocutory Interim Order shall be dismissed. Since the Motion to Quash should have been directed to the Bankruptcy Court, and given the date of the deposition has already passed, the Motion to Quash will be denied. With respect to the appeal of the Final Order, Appellant's Emergency Stay Motion shall be denied.

---

[2] References to "Adv. D.I." are to the docket in *Miller v. Mott, et al.*, Adv. No. 23-50004 (CTG) (Bankr. D. Del.).

Accordingly, Appellant's Motion for Hearing will be denied. The Court will grant a temporary stay of the Final Order for fourteen (14) days to permit Appellant to seek relief beyond this Court.

### I.   BACKGROUND

The facts relevant to these appeals are summarized in the Bankruptcy Court's July 9, 2024 Memorandum Opinion (Adv. D.I. 256) (the "Sanctions Opinion").

In 2022, two creditors obtained a substantial judgment against the debtor in the U.S. District Court for the Northern District of Florida. Those creditors, GPDEV, LLC and Simons Exploration, are hereinafter referred to as the "judgment creditors." After failing to obtain a stay of the enforcement of that judgment, the Debtor filed this bankruptcy case. The judgment creditors moved to dismiss the bankruptcy case alleging that it was filed in bad faith. After the parties agreed that conversion of the case to a chapter 7 would better serve the interests of creditors and the estate than would dismissal, the Bankruptcy Court converted the case.

The Trustee commenced an adversary proceeding against the members and former managers of the Debtor and certain of their affiliates (the "Defendants") seeking, among other things, to avoid and recover millions of dollars in transfers made while the Debtor was a defendant in litigation brought by certain creditors. (Sanctions Op. 1-2, 4-5.) Many of the transfers to the Defendants were concealed. (*Id.*) For example, certain transfers to or for the benefit of the Defendants were not disclosed on the Debtor's Statement of Financial Affairs, and certain transfers to the Defendants were concealed because the Defendants' names were whited out on the copies of the bank statements produced to the Trustee. (*Id.* at 5.) The Trustee obtained clean copies of those statements from the banks, revealing that the Defendants were recipients of the transfers. On January 27, 2023, following an evidentiary hearing at which the Defendants were represented by counsel, the Bankruptcy Court entered a Preliminary Injunction against certain Defendants. (Adv. D.I. 25.) On

January 31, 2024, the Bankruptcy Court filed an opinion in support of the Preliminary Injunction. (Adv. D.I. 29.)

In January 2024, Appellant, Mr. Mott, appeared as counsel for the Defendants. The judgment creditors objected to the *pro hac vice* admission of Appellant on the ground his application "fails to disclose his familial relationship with his clients. Upon information of belief, Mr. Mott is Deborah Mott's ex-husband and Christopher Mott's father." (Adv. D.I. 165 at 1.) The Bankruptcy Court granted Appellant's motion to appear *pro hac vice*. (Adv. D.I. 171.)

On January 31, 2024, a year and four days after the Preliminary Injunction was entered, Mr. Mott and his then co-counsel filed a motion on behalf of the Defendants seeking to vacate the Preliminary Injunction pursuant to Fed. R. Civ. P. 60(b)(3). Rule 60(b)(3) requires a showing of "fraud ..., misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3). Rule 60(c)(1) required the Defendants to have filed their motion within one year of entry of the Preliminary Injunction.

On February 6, 2024, the Defendants filed an amended Rule 60(b)(3) motion with a supporting brief and declarations (collectively, the "60(b)(3) Motion"). (Adv. D.I. 145-148.) The brief in support (Adv. D.I. 146) accuses counsel for the judgment creditors (who had also obtained copies of the bank statements in discovery) of having made the white-out alterations to the debtor's bank statements. A declaration, submitted by Steven M. Acosta, asserted that the Debtor provided bank statements to its original bankruptcy counsel, Robinson & Cole, that did not contain the white-out redactions. Based on that claim, the Defendants' brief concludes that the creditors "misrepresented who did the key redactions." (Adv. D.I. 146 at 24.) And while that statement, standing alone, stops short of pointing the finger at the judgment creditors, the rest of the brief can fairly be read to accuse the judgment creditors of this misconduct. "The only inference possible on this evidence," footnote 15 asserts, "is that the redactions came from the creditors." (*Id.* at 13 n.15.)

4

Appellant was the "lawyer who had principal responsibility" for the 60(b)(3) Motion and his then co-counsel testified that Mr. Mott was "the principal intellectual architect and draftsperson" of the 60(b)(3) Motion. (Sanctions Op. at 3, 12 (quoting 4/29/24 Tr. at 227).)

On February 16, 2024, the Trustee filed a lengthy objection to the 60(b)(3) Motion and a cross-motion for sanctions, responding to the allegedly false statements in the 60(b)(3) Motion, including about the white-out redactions. (Adv. D. I. 153.)

Nearly two weeks after the Trustee filed his objection, the Defendants filed a notice (Adv. D.I. 172) ("Notice of Partial Withdrawal"), withdrawing "those portions of the 60(b)(3) Motion that seek to vacate the Court's finding that the [judgment creditors] were responsible for the white-outs." The Notice of Partial Withdrawal states that the withdrawal is "without prejudice" and "Defendants continue to stand by the veracity and accuracy of all statements made in the Motion, and all information submitted with the Motion …"

On April 29, 2024, the Bankruptcy Court held an evidentiary hearing on the 60(b)(3) Motion and the cross-motions for sanctions. During that hearing, the Bankruptcy Court ruled, as a matter of law, that the 60(b)(3) Motion was time-barred when it was filed. (Sanctions Op. 6.) The Bankruptcy Court then conducted an evidentiary hearing on the cross-motions for sanctions at which Mr. Mott and his then co-counsel testified. (*See id.* at 9-14.)

On July 9, 2024, the Bankruptcy Court issued the Sanctions Opinion granting the Trustee's request for sanctions against Mr. Mott for his conduct before the Bankruptcy Court. Among other things, the Bankruptcy Court: observed that: "[A]n allegation that either a party or an attorney fabricated evidence is an exceptionally serious one…. [T]he making of such a serious allegation against another lawyer, without strong evidence supporting the truth of that allegation, is precisely the sort of conduct that might require the imposition of sanctions in order to protect the integrity of the judicial process" (*id.* at 9); found that the witness testimony and documents that Mr. Mott relied

upon in asserting that the creditors' counsel had made the white-out redactions was not credible (*id.* at 10-11 & n. 29); and concluded that, while Appellant and his co-counsel attempted to argue that there was merely an "inference" that creditors' counsel had made the white-out redactions, "any ambiguity about whether Mott acted with vexatious intent" was resolved by the fact that Mr. Mott had also filed an ethics complaint against Ms. Kasey, the judgment creditors' Delaware counsel, in which Mr. Mott alleged that counsel "[either] made [the] white redactions or knew who did and did not disclose this to the court" (*id.* at 19, 21) (quoting ethics complaint).

Having determined to award sanctions, the Bankruptcy Court directed the parties to settle a form of order. On July 22, 2024, the Bankruptcy Court entered the parties' agreed Interim Order, which, among other things, granted sanctions against Appellant and established a schedule for the parties to submit fee statements and for Appellant to file an objection to same. Also, on July 22, 2024, Appellant appealed the Interim Order.

On August 1, 2024, the Trustee filed and served his Fee Statement for Sanctions Award, seeking $156,500.45 in professional fees and expenses. (Adv. D.I. 277.) On August 14, 2024, Appellant filed his objection to the Trustee's fee statement. (Adv. D.I. 298.) The principal focus of Appellant's objection was the assertion that the "issue of the white-outs ... was withdrawn on February 6, 202[4], so the only fees that could be considered would be those from January 31 up to its withdrawal date." (*Id.* at 1-2.)

On August 19, 2024, the Trustee filed with this Court the Motion to Dismiss or, Alternatively, Denying Leave to Appeal (D.I. 4) (the "Motion to Dismiss") with respect to the appeal of the Interim Order. The Motion to Dismiss is unopposed.

On September 10, 2024, the Bankruptcy Court entered the Final Order. Among other things, the Final Order fixed the dollar amounts of the sanctions award against Appellant. Final Order at

4. The Final Order also overruled Appellant's assertions regarding the withdrawal of the white-out redaction allegations. (Final Order at 3.)

On September 16, 2024, Appellant appealed the Final Order, which remains pending. (Civ. No. 24-1035-GBW.)

On September 20, 2024, the Emergency Stay Motion was filed and docketed in the appeal of the Interlocutory Order.

## II.   JURISDICTION AND STANDARD OF REVIEW

### A.   The Interim Order

The Interim Order, issued before a sanctions amount had been set, is interlocutory. *See IMEG Corp. v. Patel*, 2022 WL 1055575, at *2 (3d Cir. Apr. 8, 2022). This Court has jurisdiction to hear appeals, with leave of the court, from "interlocutory orders and decrees of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title." 28 U.S.C. § 158(a)(3). Section 158(a) does not identify the standard district courts should use in deciding whether to grant such an interlocutory appeal. *See id.* "Typically, however, district courts follow the standards set forth under 28 U.S.C. § 1292(b), which govern interlocutory appeals from a district court to a court of appeals." *In re AE Liquidation, Inc.*, 451 B.R. 343, 346 (D. Del. 2011).[3]

Under the standards of § 1292(b), an interlocutory appeal is permitted only when the order at issue (1) involves a controlling question of law upon which there is (2) substantial ground for difference of opinion as to its correctness, and (3) if appealed immediately, may materially advance the ultimate termination of the litigation. *See* 28 U.S.C. § 1292(b); *Katz v. Carte Blanche*

---

[3] *See also In re Philadelphia Newspapers, LLC*, 418 B.R. 548, 556 (E.D. Pa. 2009) ("Based upon the decision of the Third Circuit in *Bertoli v. D'Avella (In re Bertoli)*, 812 F.2d 136, 139 (3d Cir. 1987), courts within this Circuit confronted with the decision whether to grant leave to allow an interlocutory appeal are informed by the criteria in 28 U.S.C. § 1292(b).").

*Corp.*, 496 F.2d 747, 754 (3d Cir. 1974). Entertaining review of an interlocutory order under § 1292(b) is appropriate only when the party seeking leave to appeal "establishes exceptional circumstances [to] justify a departure from the basic policy of postponing review until after the entry of final judgment." *In re Del. and Hudson Ry. Co.*, 96 B.R. 469, 472-73 (D. Del. 1989), *aff'd*, 884 F.2d 1383 (3d Cir. 1989). In part, this stems from the fact that "[p]iecemeal litigation is generally disfavored by the Third Circuit." *In re SemCrude, L.P.*, 2010 WL 4537921, at *2 (D. Del. Oct. 26, 2010) (citing *In re White Beauty View, Inc.*, 841 F.2d 524, 526 (3d Cir. 1988)). Further, leave for interlocutory appeal may be denied for "entirely unrelated reasons such as the state of the appellate docket or the desire to have a full record before considering the disputed legal issue." *Katz*, 496 F.2d at 754.

Appellant failed to seek leave to take interlocutory appeal pursuant to 28 U.S.C. § 158(a)(3) (allowing interlocutory appeals of bankruptcy court orders "with leave of the court"). Appellant has further failed to demonstrate that the requirements of 28 U.S.C. § 1292(b) are satisfied or any exceptional circumstance would warrant an order granting leave. Even if the Court were to grant leave to appeal the Interim Order, it is unclear what effect that would have, as the Bankruptcy Court has since entered the Final Order, which is the subject of a separate appeal. Indeed, under the appellate "merger" rule, the Interim Order merged into the Final Order and may only be considered as part of any appeal of the Final Order. *See In re Westinghouse Secs. Litig.*, 90 F.3d 696, 706 (3d Cir. 1996) ("Under the 'merger rule,' prior interlocutory orders merge with the final judgment in a case, and the interlocutory orders (to the extent that they affect the final judgment) may be reviewed on appeal from the final order."). Finally, Appellant has not opposed the Trustee's Motion to Dismiss for lack of jurisdiction. Accordingly, the appeal of the Interim Order shall be dismissed.

      B.      **Final Order**

Appeals from the Bankruptcy Court to this Court are governed by 28 U.S.C. § 158. District courts have mandatory jurisdiction to hear appeals "from final judgments, orders, and decrees." 28 U.S.C. § 158(a)(1). The Final Order, setting the amount of sanctions, is a final, appealable order.

### C. Stay Pending Appeal

"The granting of a motion for stay pending appeal is discretionary with the court." *In re Trans World Airlines, Inc.*, 2001 WL 1820325, at *2-3 (Bankr. D. Del. Mar. 27, 2001). Appellant bears the burden of demonstrating that a stay of the Final Order is warranted based on the following criteria: (1) whether the movant has made "a strong showing" that it is likely to succeed on the merits; (2) whether the movant will be irreparably injured absent a stay; (3) whether a stay will substantially injure other interested parties; and (4) where the public interest lies. *Republic of Philippines v. Westinghouse Electric Corp.*, 949 F.2d 653, 658 (3d Cir. 1991). The most critical factors, according to the Supreme Court, are the first two: whether the stay movant has demonstrated (1) a strong showing of the likelihood of success, and (2) that it will suffer irreparable harm – the latter referring to harm that cannot be prevented or fully rectified by a successful appeal. *In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015) (citing *Nken v. Holder*, 556 U.S. 418, 434 (2009). The Court's analysis should proceed as follows:

> Did the applicant make a sufficient showing that (a) it can win on the merits (significantly better than negligible but not greater than 50%) *and* (b) [it] will suffer irreparable harm absent a stay? If it has, we balance the relative harms considering all four factors using a 'sliding scale' approach. However, if the movant does not make the requisite showings on either of these first two factors, the inquiry into the balance of harms and the public interest is unnecessary, and the stay should be denied without further analysis.

*Revel AC*, 802 F.3d at 571 (emphasis in text) (internal quotations and citations omitted).

## III. DISCUSSION

### A. Likelihood of Success on the Merits

9

With respect to the first factor—a strong showing of the likelihood of success—the *Revel* court noted, "a sufficient degree of success for a strong showing exists if there is a reasonable chance, or probability of winning. Thus, while it is not enough that the chance of success on the merits be better than negligible, the likelihood of winning on appeal need not be more likely than not." *In re Revel AC*, 802 F.3d at 568-69 (internal quotation marks and internal citations omitted).

The Bankruptcy Court awarded sanctions under § 1927, which provides that:

> Any attorney or other person admitted to conduct cases in any court of the United States … who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. Appellant raises three main arguments on appeal.

First, Appellant argues that, "[o]n February 6, 2024, Defendants withdrew the allegations as to the white out redactions" while "indicating that in a future motion the issue would be raised under a less strenuous burden of proof," thus the 60(b)(3) Motion (as amended by the Notice of Partial Withdrawal) did not contain any allegations concerning the white out redactions. Thus, according to Appellant, "there was no 'vexatious multiplication of the proceedings' required by section 1927" since "the matter had been promptly withdrawn." (D.I. 9 at 4.) As the issue of the white-outs "was withdrawn on February 6, 202[4]," Appellant contends, the only fees that could be considered would be those from January 31 up to its withdrawal date." (*Id.* at 1-2.) Appellant further cites case law holding that "[o]bjectionable conduct—even 'unreasonable and vexatious' conduct—is not sanctionable unless it results in proceedings that would not have been conducted otherwise." (*Id.* (quoting *Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir. 1997).)

As an initial matter, the Notice of Partial Withdrawal was not filed on February 6, 2024, as Appellant repeatedly contends. Rather an original version of the 60(b)(3) Motion was filed on January 31, 2024 (Adv. D.I. 140-144); an amended version of the 60(b)(3) Motion, containing the

10

allegations against the judgment creditors and/or their counsel, was filed on February 6, 2024 (Adv. D.I. 145). The Notice of Partial Withdrawal was not filed February 29, 2024 (Adv. D.I. 172), thirteen days *after* the Trustee filed his Objection on February 16, 2024. (Adv. D.I. 153.). Indeed, the 60(b)(3) Motion contained numerous allegations accusing the judgment creditors' counsel of having made the white-out redactions.[4] Those allegations were not withdrawn until after the Trustee incurred the expenses to file an objection to the 60(b)(3) Motion. Even then, the Appellant and Defendants continued to stand by the allegations against counsel. (Adv. D.I. 172 at 3 ("While Defendants continue to stand by the veracity and accuracy of all statements made in the Motion, and all information submitted with the Motion," they will "withdraw, without prejudice, those portions of the Motion that seek to vacate the Court's finding that the [judgment creditors] were responsible for the white-outs identified in the Decision.") (Adv. D.I. 172 at 3.) The professional fees and expenses incurred by the Trustee would not have been incurred if Appellant had not filed and prosecuted the 60(b)(3) Motion. It is unclear how the Notice of Partial Withdrawal was sufficient to render any fees awarded outside of the scope of § 1927. Appellant has not carried his burden with respect to this argument.

Second, Appellant argues that 28 U.S.C. § 1927 is limited to the proceedings themselves so the Bankruptcy Court was not permitted to consider the ethics complaint that Appellant filed against Ms. Kasey, the judgment creditors' Delaware counsel, with the Delaware Supreme Court's

---

[4] *See, e.g.,* 60(b)(3) Motion at 2 ("The evidence indicates that white redactions were not done by TSI (as represented by opposing parties) but were done after the documents were produced to creditors."); at 10 ("Yet all of the redactions only appear after the documents were produced to the creditors."); at 13 n. 20 ("The only inference possible on this evidence is that the redactions came from the creditors, as they have control of the clean documents and passed them to the Trustee with alterations."); at 14 ("The document obviously went through some alteration before it was given to the Trustee by the creditors."); at 15 ("All of the facts point to redactions being made after the bank documents were transferred to the creditors before being used in the proceedings. … All the evidence and testimony shows that the redactions appeared after the Judgment Creditors received the original clean copies.").

11

Office of Disciplinary Counsel. The Bankruptcy Court noted that Appellant had filed an ethics complaint against counsel concerning the same allegations purportedly withdrawn in the Notice of Partial Withdrawal. (*See* Sanctions Op. at 11-12.) The ethics complaint stated that "Kasen made either white redactions or knew who did and did not disclose this to the court." (*Id.*) Ultimately, the Bankruptcy Court sanctioned Appellant for engaging in vexatious and unreasonable conduct before the Bankruptcy Court. (Sanctions Op. 15-21.) The Bankruptcy Court did not sanction Appellant for filing an ethics complaint. Rather, the Bankruptcy Court considered the ethics complaint as evidence of Appellant's "vexatious intent." (Sanction Op. at 21.) Appellant has not made a sufficient showing that such consideration was inappropriate.

Third, Appellant argues that the Bankruptcy Court "erred in excluding evidence on the source of the white-out redactions." (D.I. 9 at 7.) Appellant submits that his purported expert report showed that "the white-outs originated in the document production by Robinson & Cole." (D.I. 9 at 7.) Appellant omits the fact that this evidence was not disclosed prior to or presented at the April 29, 2024 evidentiary hearing. (*See* Sanctions Op. at 22-24.) The Trustee points out that, at the conclusion of the April 29, 2024 hearing, the Bankruptcy Court explicitly stated that the record was closed. (*See* Adv. D.I. 228 ("4/29/24 Tr.") at 261:5 ("So the evidence is now closed.").) Appellant points to the Bankruptcy Court's statement, at the conclusion of the evidentiary hearing, permitting post-trial letter briefing: "So two weeks from today, you can write me letters. I'll look at whatever you send me. If there's additional authority, if there are things that you think are evidentiary, what have you, I'll look at it and we'll figure out what – how to rule on any issues about evidence. And then I'm going to take it under advisement and do the best I can to call balls and strikes to the best of my ability." (4/29/24 Tr. at 314.) Thereafter, Appellant attempted to introduce the expert report by attaching it to the post-trial letter, which the Trustee argues was "a clear attempt to sandbag the Trustee and other parties." (D.I. 12 at 15.) The

12

Bankruptcy Court declined to consider these documents that were improperly presented for the first time in a post-trial brief and which are not part of the record. (Sanctions Op. at 22-24). *See e.g., TruePosition Inc. v. Andrew Corp.,* 2008 WL 205305, at *2 (D. Del. Jan. 23, 2008) (granting motion to strike portions of post-trial brief that were not included as part of the record and stating that the court would not consider them in disposition of the post-trial motions); *Tristrata Tech., Inc. v. ICN Pharms., Inc.,* 314 F. Supp. 2d 356, 358 (D. Del. 2004) (striking declaration attached to post-trial brief that was not admitted at trial).

The Bankruptcy Court's comment regarding letter briefing clearly contemplates unresolved evidentiary issues and invites argument; it does not contemplate a further evidentiary hearing, nor does it permit the introduction of further evidence that could not be tested on cross-examination. Perhaps better than negligible, Appellant has not met his burden of showing sufficient likelihood of success on the merits of this argument.

The Bankruptcy Court's decision to award sanctions against Appellant is supported by a substantial, largely unrebutted record. Appellant has failed to show that he is likely to succeed on the merits of the appeal.

### B.   Irreparable Harm

To establish that he would suffer irreparable harm in absence of a stay, Appellant must establish a resulting "harm that cannot be prevented or fully rectified by a successful appeal. *In re Revel AC,* 802 F.3d at 568 (citing *Nken v. Holder,* 556 U.S. 418, 434 (2009) (internal quotation marks and internal citations omitted). "[T]he applicant must demonstrate that irreparable injury is *likely* [not merely possible] in the absence of a stay." *Id.* at 569. While Appellant is proceeding *pro se* in these appeals, he is an attorney, admitted to practice in the District of Columbia and admitted *pro hac vice* in this District.

Appellant argues in his opening brief that he will suffer irreparable harm in absence of a stay based on reputational harm. Appellant has included in his designation of record on appeal a Law 360 article which references the sanctions imposed on him. (D.I. 15.) Appellant cites the Third Circuit's decision in *Bowers* which held that an attorney had standing to appeal a non-quantified sanction order because a public reprimand carries "the formal censure of the court and may have a more adverse effect on an attorney than a minimal monetary sanction." *Bowers v. Nat'l Collegiate Athletic Assoc.*, 475 F.3d 524, 543 (3d Cir. 2007). According to Appellant, "[t]his case demonstrates that reputational harm is considered a cognizable injury when determining the justiciability of a sanctions order." D.I. 9 at 3. Appellant further cites *Grider v. Keystone Health Plan Cent., Inc.*, 580 F.3d 119, 123 (3d Cir. 2009). Those decisions are distinguishable as they stand for the proposition that certain non-monetary sanctions may constitute harm for purposes of standing or mootness, but they do not address irreparable harm or the standard for a stay pending appeal. Appellant further cites *Feldman & Pinto, P.C. v. Seithel*, 2011 WL 6758460, at *1-5 (E.D. Pa. Dec. 22, 2011), a case that involved a motion for a preliminary injunction where an attorney formerly associated with the plaintiff law firm allegedly solicited certain of the plaintiff's clients. This case involves no similar facts.

In his reply, however, Appellant submits an affidavit in support of new contentions that he is "semi-retired;" "owns no real estate or other fixed assets with any value in the United States or Europe;" receives only limited income in the form of Social Security payments and part-time work; the sanctions award in the Final Order "exceeds by large measure my total net worth;" and that "[c]ollection of this judgment would render me insolvent." (D.I. 16-2.) Insolvency has been found to constitute irreparable harm in certain instances. Asserted for the first time in Appellant's reply, the Trustee has had no opportunity to respond to these arguments. Assuming that Appellant has carried his burden of demonstrating irreparable harm absent a stay based on his financial

14

circumstances, having failed to carry his burden as to likelihood of success on the merits, the Court is satisfied no further analysis is required. *See Revel AC*, 802 F.3d at 571.

The Court is reluctant to deny the Emergency Stay Motion without allowing time for Appellant to seek further relief. Appellant asserts that the Bankruptcy Court has stayed the Final Order for 14 days beginning on September 25, 2024—thus, presumably expiring October 9, 2024. (D.I. 14). Appellant cites no bench ruling, order, or other authority in support of this statement. Possibly, Appellant refers to Federal Rule of Bankruptcy Procedure 7062, which provides that Federal Rule of Civil Procedure 62 "applies in adversary proceedings, except that proceedings to enforce a judgment are stayed for 14 days after its entry." Fed. R. Bankr. P. 7062. As the Final Order was issued on September 10, 2024, it seems any 14-day stay would have expired on September 24, 2024.

Notwithstanding this lack of clarity, the Final Order shall be stayed for an additional fourteen (14) days to permit Appellant to seek relief beyond this Court.

## IV. CONCLUSION

The Court will issue an Order consistent with this Memorandum.

_____
UNITED STATES DISTRICT JUDGE

15